UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| OREGON POTATO COMPANY, a Washington Company,<br><br>              Plaintiff,<br><br>   v.<br><br>KINSALE INSURANCE COMPANY, a foreign corporation,<br><br>             Defendant. | NO. 2:22-CV-0049-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

BEFORE THE COURT are Defendant's Motion for Partial Summary Judgment on Occurrence of Limit of Liability Endorsement (ECF No. 36) and Plaintiff's Cross-Motion for Partial Summary Judgment (ECF No. 39). These matters were submitted for consideration with oral argument. However, the Court determined that oral argument was unnecessary. LCivR 7(i)(3)(B)(iii). The Court has reviewed the record and files herein, and is fully informed. For the reasons discussed below, Defendant's Motion for Partial Summary Judgment on

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 1

Occurrence of Limit of Liability Endorsement (ECF No. 36) is **granted** and Plaintiff's Cross-Motion for Partial Summary Judgment (ECF No. 39) is **denied**.

## BACKGROUND

This arises from a first-party property insurance excess coverage dispute. *See* ECF No. 1-2 at 2. On January 11, 2022, Plaintiff filed a Complaint in Grant County Superior Court for (1) declaratory judgment, (2) breach of contract, (3) insurance bad faith and breach of the covenant of good faith and fair dealing, (4) violation of Washington's Unfair Claims Settlement Practices Act (WAC 284-30 *et seq.*) and Consumer Protection Act (RCW 19.86), and (5) reservation to assert claims for violation of Washington's Insurance Fair Conduct Act (RCW 48.30.015). *See id.* at 6–9. On March 17, 2022, Defendant removed the action to this Court. ECF No. 1. Except where noted, the following facts are not in dispute.

Oregon Potato Company ("OPC") is a Washington corporation headquartered in Pasco, Washington that processes vegetable products and has a facility in Warden, Washington. ECF No. 37 at 1–2, ¶¶ 1–2, 4. Kinsale Insurance Company is an Arkansas corporation headquartered in Virginia. *Id.* at 2, ¶ 3.

On January 21, 2021, a fire destroyed or damaged OPC property in Warden. *Id.*, ¶ 5. OPC purchased first-party property insurance covering its properties. *Id.*, ¶ 6. The fire occurred during OPC's July 1, 2020 to July 1, 2021 coverage period. *Id.*, ¶ 7.

OPC's property insurance during the policy period was written in three layers, with the following insurers taking the respectively-shown positions and percentages: (1) Liberty Mutual covers 100% of the primary layer for $0 to $10,000,000; (2) CM Vantage (50%), Swiss Re (33.33%), and AIG (16.67%) cover the first excess layer for $10,000,000 to $25,000,000 for the shares shown in their respective parentheses; and (3) Tokio Marine (50%), Partner Re (10%), RSUI (20%), and Kinsale (20%) cover the second excess layer for $25,000,000 to $50,000,000 for the shares shown in their respective parentheses. *Id.* at 2–3, ¶ 8. OPF disputes these amounts to the extent that no insurers (except Swiss Re) express liability as a percentage of their respective layers: here, Kinsale expresses liability as "$5,000,000 Part of $25,000,000 Excess of $25,000,000 Per Occurrence." ECF No. 47 at 3, ¶ 2.

When OPC obtained the insurance, it represented to Liberty Mutual that the following sub-locations at OPC's Warden facility had the following estimated values: (1) Receiving/Processing/DHF/Cold Storage/Office sub-location building at $25,100,000, personal property at $175,000, and loss of income at $13,000,000; (2) Cold Storage Freezer sub-locations building at $5,802,451; (3) Waste Plant sub-location at $612,828; and (4) Dry Storage & Shop sub-location at $1,536,000. ECF No. 37 at 3, ¶ 10.

Kinsale's policy contains the following Insuring Agreement:

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 3

1. The company will indemnify the Insured for our share, as shown in Item 1 of the Declarations Page of this Policy, of the Ultimate Net Loss caused by the direct physical loss or damage to Covered Property in excess of the Primary and Underlying Excess Insurance as shown in the Schedule of Underlying Insurance of this Policy, occurring during the policy period. This agreement is subject to the following terms, conditions and any endorsements to this Policy.

2. Applications of the Underlying Provisions – Follow Form:

   The coverage or perils insured in this Policy are subject to the terms, conditions, definitions, limitations, exclusions, and warranties contained in the policy(ies) of the Primary Insurer(s) as shown in the Schedule of Underlying Insurance of this Policy to the extent there is no conflict with this Policy. In the event the terms, conditions, definitions, limitations, exclusions, warranties, or any other provisions contained in the Primary and Underlying Excess Insurance of this Policy, respectively, are inconsistent or conflict with the terms of this Policy, this Policy shall apply ….

3. Attachment of Liability:

   It is expressly agreed that our liability under this Policy shall attach to the Company only after the Primary and Underlying Excess Insurer(s) have paid or have been held liable to pay the full amount of their respective Ultimate Net Loss.

Kinsale's policy contains the following Limit of Liability Clause:

   Provided always that the liability of the Company applies only after the Primary Insurer(s) have agreed to pay the full amount of their respective Ultimate Net Loss, then the Company shall be liable to pay our share of the Ultimate Net Loss up to the full amount of the Limit of Liability as specified in Item 1. Of the Declarations Page of this Policy. The maximum recovery in any one occurrence for any coverage subject to a sub limit shall be that sub limit provided by the Primary and/or Underlying Excess Insurance ….

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 4

ECF No. 37 at 5, ¶ 14.

Kinsale's policy defines "Ultimate Net Loss" as follows:

**Ultimate Net Loss** shall mean the actual loss sustained by the Insured as a direct physical result of the peril(s) insured against by the policy(ies) of the Primary and/or Underlying Excess Insurer(s) limited by:

  a. Any sub limited contained within this Policy or the policy(ies) of the Primary and/or Underlying Excess Insurer(s), and

  b. Making deductions for any salvage and recoveries from any source other than this Policy and the policy(ies) of the Primary and/or Underlying Excess Insurer(s).

*Id.*, ¶ 15.

Kinsale's policy contains an "Occurrence Limit of Liability Endorsement" ("OLLE"):

It is understood and agreed that the following terms and conditions apply this Policy:

1. The Limit of Liability as specified in Item 1 of the Declarations page is a limit per occurrence. Notwithstanding anything to the contrary within this Policy, in no event shall the liability of this Company exceed this Limit of Liability in one disaster, casualty, or event, irrespective of the number of locations involved.

Occurrence shall mean any one direct physical loss, disaster or casualty or series of direct physical losses, disasters or casualties arising out of one event which occurs within the policy period and territory ….

2. The Premium for this Policy is based upon the Statement of Values, on file with the Company, or attached to this Policy. In event of loss under this Policy, liability of the Company shall be limited to the least of the following:

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 5

  a. The actual adjuster amount of loss, less applicable deductible(s).

  b. An amount no greater than 100% of the individually stated value for the property, involved, as shown on the Statement of Values, on file with the Company, less applicable deductible(s).

  c. The Limit of Liability as specified in Item 1 of the Declarations Page.

3. If the underlying policy(ies) contain(s) a separate Limit of Liability for specific perils, coverage(s), types of property(ies) or location(s), then this Policy provides no coverage in excess of that specific Limit of Liability, unless the Declarations Page of this Policy sets forth its own Limit of Liability for those peril(s), coverage(s), types of property(ies) or location(s).

*Id.* at 6, ¶ 17.

On July 21, 2021, a fire occurred at OPC's facility in Warden, Washington. *Id.*, ¶ 18. The first sub-location listed on the Statement of Values, shown in paragraph 10, was severely damaged. *Id.* at 7, ¶ 18. Kinsale initially viewed OPC's loss as "a complete loss to our layer/capacity" and set reserves at is full $5 million limit. ECF No. 40 at 4, ¶ 8. Kinsale does not dispute that this was its preliminary determination, but contends that it was subsequently superseded by a more accurate determination of a lower loss reserve after investigation and evaluation proceeded. ECF No. 56 at 3, ¶ 8.

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 6

The Kinsale policy designated Joel Booth of Crawford Global Technical Services as the independent adjuster for any claims under the policy. ECF No. 37 at 6, ¶ 19. Mr. Booth began adjusting the loss after the fire was reported to the insurers. *Id.*, ¶ 20. Mr. Booth regularly communicated with the insurers concerning the adjustment. *Id.*, ¶ 21.

In the Report No. 1 dated March 5, 2021, Mr. Booth reported that Liberty Mutual had made payments totaling $10,000,000, exhausting the primary layer of insurance. *Id.* at 8, ¶ 22. Mr. Booth advised that three of the remaining seven policies, including Kinsale's, had endorsements that made those policies different from the other ones – the three policies had "Occurrence/Scheduled Limit of Liability Endorsements" ("OLLE"). ECF No. 37 at 8, ¶ 23. OPC notes the Kinsale's OLLE varies from RSUI's and does not contain language regarding offsets to Kinsale's liability from primary and underlying excess insurance. ECF No. 47 at 4, ¶ 4. RSUI/Landmark's "Scheduled Limit of Liability" endorsement includes offset language as follows:

> 100% of the Individually stated value for each scheduled Item of coverage insured at the location which had the loss as shown on the latest Statement of Values on file with this Company, less applicable deductibles and primary and underlying excess limits.

ECF No. 40 at 8, ¶ 21.

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 7

In the Payment Request Letter dated April 14, 2021, Mr. Booth advised that proofs of loss submitted by OPC justified the first excess layer insurers (CM Vantage, Swiss Re, and AIG) to pay their limits for a collective $15,000,000. ECF No. 37 at 8, ¶ 24.

In the Report No. 2 letter dated June 23, 2021, Mr. Booth reported that the three first layer excess insurers had paid their limits, exhausting that layer. ECF No. 37 at 8, ¶ 25. Mr. Booth recommended that the second excess layer remit payment of $4,445,583.59. *Id.* Mr. Booth advised that because the policies' language varied, "this payment will be more heavily apportioned to Insurers that do not include any wording in their policies limited recoveries to reported values." *Id.* at 9, ¶ 25. As a result, Mr. Booth recommended that the insurers bearing a sixty percent share of the second excess layer pay a total of $4,313,421.86 but on account of their limiting endorsements, Kinsale and RSUI should each pay $66,080.87, for a total of $132,161.74. *Id.* Plaintiff disputes that Mr. Booth made a correct determination in this recommendation. ECF No. 47 at 4, ¶ 5.

In the Report No. 3 dated August 24, 2021, Mr. Booth advised that two of the four insurers on the second excess layer had committed to paying their limits. ECF No. 37 at 10, ¶ 26. At that time, Mr. Booth did not recommend any further payment from the remaining insurers Kinsale and RSUI. *Id.*

In the Payment Request Letter dated September 2, 2021, Mr. Booth asked the remaining insurers, Kinsale and RSUI to each pay the $66,080.87 referenced in Report No. 2. *Id.*, ¶ 27. This letter included sworn statements in proof of loss in those amounts signed by a representative of OPC. *Id.* OPC maintains that the proofs of loss were drafted by Mr. Booth and approved by Kinsale, which OPC then signed; as a result, the "20% share" language is not OPC's. ECF No. 47 at 5, ¶ 5. OPC maintains that is signed the proofs because "it reasonably believed Kinsale was acting in good faith and accurately stating its liability under the policy … OPC did not realize Kinsale was misapplying and mischaracterizing its policy terms in an effort to avoid paying its full $5m limit." *Id.* On September 7, 2021, Kinsale paid OPC the $66,080.87 recommended by Mr. Booth. ECF No. 37 at 10, ¶ 28.

In the Report No. 4 dated November 3, 2021, Mr. Booth advised that because other insurers in the second excess layer had paid their limits, any further payment recommendations to Kinsale and RSUI would be at 40 percent of the "measured claim balance." *Id.* at 10–11, ¶ 29. Mr. Booth reported that the remaining balance at the time was $2,682,083.42 and that Kinsale and RSUI should both pay $470,334.82. *Id.* at 11, ¶ 29. This recommendation was repeated in the Payment Request Letter dated November 18, 2021 and included OPC's

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 9

signed sworn statement in proof of loss. *Id.*, ¶ 30. On November 19, 2021, Kinsale paid OPC the $470,335.81 recommended by Mr. Booth. *Id.*, ¶ 31.

In the Report No. 5 dated February 14, 2022, Mr. Booth forwarded OPC's calculation of its "gross claim" of $49,768,063.83 less payments of $41,072,833.36 for a "claim balance" of $8,695,230.47. *Id.*, ¶ 32. Mr. Booth recommended that each of the two remaining insurers pay $288,959.42 for a total of $577,918.84. *Id.* On April 19, 2022, Kinsale paid OPC the $288,959.42 recommended by Mr. Booth. *Id.*, ¶ 33.

In the Report No. 6 dated May 20, 2022, Mr. Booth reported on developments and did not recommend further payments. *Id.* at 11–12, ¶ 34. In the Report No. 7 dated July 28, 2022, Mr. Booth compared estimated claim amounts, amounts claimed by OPC, claim amounts validated by Kinsale's expert, and applicable policy limits, as to all elements of OPC's claim except extra expense or business interruption. *Id.* at 12, ¶ 35. Mr. Booth advised that for RSUI and Kinsale, "recoveries for Real Property losses at Location No.1, Building No. 1, would be limited to the reported values, which are $25,100,000." *Id.* Mr. Booth calculated the next recommended Kinsale payments, which Kinsale's net recommended share at $178,543.82. *Id.* at 13, ¶ 36. On August 17, 2022, Kinsale paid OPC the $178,543.82 recommended by Mr. Booth. *Id.*, ¶ 37.

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 10

In the Report No. 8 dated September 27, 2022, Mr. Booth noted that the real property claim values previously reported had not changed. *Id.*, ¶ 38. However, Mr. Booth reported on other losses, recommending further payment by Kinsale in the amount of $81,964.75. *Id.* at 14, ¶ 38. On October 4, 2022, Kinsale paid OPC the $81,964.75 recommended by Mr. Booth. *Id.*, ¶ 39. In the Report No. 9 dated February 6, 2023, Mr. Booth did not recommend further payment by either insurer. *Id.*, ¶ 40.

To date, Kinsale has made payments in the amount totaling $1,085,884.67. *Id.*, ¶ 41. Kinsale's payments were reviewed, approved, and made by Mr. Murray on Kinsale's behalf according to Mr. Booth's calculations, and can be summarized as follows:

   a. The loss related to the Receiving/Processing Building exceeded OPC's declared value of $25,100,000. Since the insurance underlying Kinsale's layer totaled $25,000,000 and Kinsale's share of its layer is 20%, Mr. Booth recommended and Kinsale paid 20 percent of that $100,000 in excess of the $25,000,000 layer, or $20,000.

   b. The loss related to the Cold Storage/Freezer was approximately $565,118. Since that damage is less than the declared value of that other building, and since the underlying layer of $25,000,000 had

       been exhausted, Mr. Booth recommended and Kinsale paid 20 percent of that $565,118, or $113,024.

c. The loss related to the business personal property was over $400,000. Since that damage exceeds the $175,000 declared value for that property, and the underlying layer of $25,000,000 was exhausted, Mr. Booth recommended and Kinsale paid 20 percent of $175,000, or $35,000.

d. To date, the reported loss related to extra expense is approximately $4,589,000. Since that amount is less than the $13,000,000 declared value, and since the underlying layer of $25,000,000 was exhausted, Mr. Booth recommended and Kinsale has paid approximately $917,800 to date. This portion of the claim remains open for additional submitted proof of loss.

*Id.* at 14–15, ¶ 42.

OPC sent an Insurance Fair Conduct Act notice to Kinsale asking to pay its full $5 million limit. ECF No. 40 at 6, ¶ 14. Kinsale responded that its policy "unambiguously" provides only "limited liability for Location 1 to the $25,100,000 stated value" and that its limit of liability is not $5 million, but instead 20% of every dollar of loss above $25 million. *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 12

At present, OPC and Kinsale disagree on the interpretation and construction of the OLLE in Kinsale's policy, with OPC contending it is currently entitled to payment of the remaining balance of Kinsale's $5,000,000 policy limit and Kinsale contending that it has paid all sums due according to proofs of loss submitted to date. *Id.* at 16, ¶ 43.

## DISCUSSION

### I. Summary Judgment Standard

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 13

1   For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## II. OLLE

The parties agree the present dispute is governed by Washington law. *See* ECF Nos. 36, 39. "In Washington, construction of an insurance policy is a question of law for the courts[.]" *Kitsap Cty. v. Allstate Ins. Co.*, 136 Wash. 2d 567, 575 (1998). Courts consider an insurance policy as a whole with a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wash. 2d 165, 171 (2005) (quotation marks omitted). Courts enforce clear and unambiguous language as written, but strictly construe ambiguous language against the drafter and in favor of the insured. *Id.* If language is ambiguous, courts may consider extrinsic evidence to resolve the parties' intent. *Id.* at 172.

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 14

Plaintiff urges the court to adopt the analysis in *Trident Seafood Corp. v. Commonwealth Ins. Co.*, 850 F. Supp. 2d 1189 (W.D. Wash. 2012). ECF No. 39. There, the court reviewed a similar provision (referenced as LLOLE) and found "nothing in the LLOLE indicates that the amount provided in the SOV will be offset by the primary and first layer payments. Nor does the total policy limit of $10 million quoted above reference the SOV." *Trident*, 850 F. Supp. 2d at 1199. Finding the language ambiguous, the court considered the extrinsic evidence that a previous endorsement contained the language "less applicable deductible(s) and/or underlyer(s)" that was removed in the policy at issue. *Id.* Based on the removal of this language, the court found the LLOLE did not allow the insurer to offset its obligation by subtracting the underlying insurance payments from the amount stated in the SOV. *Id.* The Court finds this case distinguishable as that case considered extrinsic evidence that the Court does not rely on here.

Kinsale urges the Court to adopt the analysis in *LES Realty Trust "A" v. Landmark American Ins. Co.*, where the Massachusetts Court of Appeals construed policy language as limiting the insurer's liability in those listed in the statement of values less the amount paid by underlying insurers. *See* ECF No. 36 at 11 (citing 82 Mass. App. Ct. 694, 977 N.E.2d 566 (2012)). While there are similarities in the language, the Court need not rely on this case to resolve this dispute under Washington insurance contract principles.

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 15

The OLLE is a modification to the underlying policy and sets the upper limits of Kinsale's liability.  *See* ECF No. 38-1 at 22.  The OLLE is read in conjunction with the rest of the policy as "ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED."  *Id*.  The underlying policy states that Kinsale will indemnify OPC "for our share … of the Ultimate Net Loss … in excess of the Primary and Underlying Excess Insurance as shown in the Schedule of Underlying Insurance of this Policy".  ECF No. 41 at 84, ¶ A.  The "Limit of Liability" provides: "[T]he liability of [Kinsale] applies only after the Primary Insurer(s) and Underlying Excess Insurers have agreed to pay the full amount of their respective Ultimate Net Loss, then [Kinsale] shall be liable to pay our share of the Ultimate Net Loss up to the full amount of the Limit of Liability as specified in Item 1."  ECF No. 41 at 84, ¶ B.  Item 1 is "$5,000,000 Part of $25,000,000 Excess of $25,000,000 Per Occurrence."  ECF No. 38-1 at 2.  Finally, Kinsale's "Other Insurance" Clause reads: "You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part.  If you do, we will pay our share of the covered loss or damage.  Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis … If there is other insurance covering the same loss or damage, other than that described in A. above, we will pay only for the amount covered loss or

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 16

damage in excess of the amount due from that other insurance … we will not pay more than the applicable Limit of Insurance." ECF No. 41 at 91, ¶ 9.

Taken together, the language of Kinsale's policy is not ambiguous. Kinsale's insurance policy provides excess coverage, which when triggered, is for their "share", i.e. $5 million out of the $25 million, or 20 percent. Kinsale's proportional/share liability does not automatically entitle OPC to $5 million under the OLLE – to read otherwise would entitle OPC to overlapping, not excess, coverage. Therefore, summary judgment in Kinsale's favor is appropriate.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for Partial Summary Judgment on Occurrence of Limit of Liability Endorsement (ECF No. 36) is **GRANTED**.

2. Plaintiff's Cross-Motion for Partial Summary Judgment (ECF No. 39) is **DENIED**.

3. The Court **DECLARES** as follows:

    a. Defendant has met its maximum payment obligation to Plaintiff under the subject insurance policy, for Plaintiff's claims for damage to its insured buildings, the equipment associated with them, and the personal property located in them;

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 17

      b. Defendant has met its maximum payment obligation to Plaintiff on claims submitted to date under the subject insurance policy, for Plaintiff's claims for extra expense and business interruption;

      c. Defendant's maximum total payment obligation to OPC for extra expense and business interruption is limited to $2,600,000 (inclusive of amounts already paid).

The District Court Executive is directed to enter this Order and furnish copies to counsel. The file remains **OPEN**.

DATED May 5, 2023.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 18